785 So.2d 177 (2001)
Alfred AUSTIN, et al., Plaintiff-Appellant,
v.
ABNEY MILLS, INC., et al., Defendants-Appellees.
No. 34,495-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2001.
Rehearing Denied May 3, 2001.
*178 John F. Dillon, New Orleans, Ness, Motley, Loadholt, Richardson & Poole by Donni E. Young, Scott Galante, Baton Rouge, Bruscato, Tramontana & Wolleson by J. Antonio Tramontana, Monroe, Scott C. Taylor, Paul Benton, Counsel for Appellant, Alton Hogue.
Bordelon, Hamlin & Theriot by William J. Hamlin, William C. Ellison, Joell M. Keller, New Orleans, Counsel for Appellees.
Juge, Napolitano, Guilbeau, Ruli & Frieman by Denis Paul Juge, Christa L. Dalton, Metairie, Counsel for Louisiana Association of Business and Industry.
Before WILLIAMS, CARAWAY and KOSTELKA, JJ.
KOSTELKA, J.
Alton Hogue ("Hogue") appeals the trial court summary judgment which determined that Hogue's sole remedy for asbestos-related work injuries was in workers' compensation. We amend the judgment, and, as amended, affirm.

FACTS
On December 30, 1997, Alton and Betty Hogue and numerous other plaintiffs filed a tort action for asbestos-related damage against various asbestos manufacturers and suppliers. On July 20, 1999, Hogue amended his petition to include negligence and intentional tort claims against his former employers, International Paper ("IP") *179 and Arizona Chemical Company ("AC"), and unnamed directors and executive officers of the companies.[1] In his petition, Hogue alleged that during his employment with IP and AC, he had "suffered excessive exposure to asbestos and asbestos-containing materials," which "caused him injuries." Hogue worked for IP from 1955 to 1960 and for AC from 1960 to December 1998, when he retired after being diagnosed with mesothelioma, a type of cancer associated with asbestos exposure. Hogue ceased working in July of 1998 due to his illness.
On February 4, 2000, IP and AC sought a motion for summary judgment seeking to be dismissed from the action based upon tort immunity under La. R.S. 23:1031.1 (the workers' compensation occupational disease statute) and La. R.S. 23:1032 (the worker's compensation immunity provisions). After hearing arguments and considering the evidence offered in support of and opposition to the summary judgment motion, the trial court ruled in favor of IP and AC. This appeal ensued.

APPLICABLE LAW

Summary Judgment
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App. 2d Cir.03/31/99), 731 So.2d 482. The motion should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Leckie v. Auger Timber Co., 30,103 (La.App. 2d Cir.01/21/98), 707 So.2d 459. The burden of proof remains with the mover. La. C.C.P. art. 966(C)(2). When a motion is made and supported, as required by La. C.C.P. art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Kennedy v. Holder, 33,346 (La.App. 2d Cir.05/10/00), 760 So.2d 587; Yarbrough, supra.

Workers' Compensation
The Workers' Compensation Act provides basic coverage for injuries sustained in the course of employment. The Act was a compromise between labor and industry pursuant to which laborers received guaranteed no-fault recovery and industry was relieved of the possibility of large damage awards in the tort system. That is, the employer agreed to pay on some claims for which there might have been no tort liability in exchange for the limited liability of workers' compensation, and the employee agreed to give up available tort actions and remedies in exchange for sure and certain relief under the Act. This quid pro quo between employers and employees is central to the Act. Thus, it is a fundamental principle that the employee must have the possibility of recovery under *180 the Act for this compromise to apply. Barring a tort action without providing a substitute remedy under the Act would abrogate the quid pro quo compromise between the employee and employer. The exclusivity provisions of the Act are also part of the compromise. O'Regan v. Preferred Enterprises, Inc., 98-1602 (La.03/17/00), 758 So.2d 124.
Prior to 1976, La. R.S. 23:1032 provided that workers' compensation benefits were the exclusive remedy of an employee, his personal representatives, dependents or relations against an employer for injuries arising out of and in the course of employment. The law, however, did not expressly confer tort immunity on executive officers. It was not until 1976 that the legislature amended the provisions of La. R.S. 23:1032 to extend the employer's tort immunity to executive officers.
In 1952, the Legislature established statutory authority allowing for the recovery of occupational diseases under Louisiana workers' compensation law. Then, that statute provided a definition of occupational disease which did not include mesothelioma. The statute, as enacted in 1952 and as amended in 1958, also provided that the rights and remedies granted to an employee for occupational diseases for which he was entitled to workers' compensation benefits was "exclusive of all other rights and remedies of such employee, his personal representatives, dependents or relatives."
In 1975, the Legislature changed the definition of occupational disease to include "that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." La. R.S. 23:1031.1(B).

DISCUSSION
Although he was not diagnosed with mesothelioma until December 12, 1998, Hogue argues that his pre 1975 exposures, from 1955 to 1975, allow him to file a tort suit against his employer and the executive officers because his cause of action in tort "vested" prior to the enactment of La. R.S. 23:1031.1 in 1975 and, of course, the 1976 amendment of La. R.S. 23:1032.[2]
Hogue combines two arguments in reaching his conclusion. He first contends that based upon the holding in Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), the date of exposure to asbestos determines the applicable workers' compensation law. Because his exposure occurred prior to the time mesothelioma was a covered occupational disease, he argues that his tort cause of action "vested" prior to the enactment of the 1975 mesothelioma coverage and cannot be taken away from him via either La. R.S. 23:1031.1 or 23:1032.[3]See, Walls v. American Optical Corp., 98-0455 (La.09/08/99), 740 So.2d 1262.
We cannot agree that Cole, supra, stands for the proposition that Hogue suggests. Cole involved the interpretation of the term "events" in the enactment provisions of the comparative fault law. The Cole court clearly stated that its interpretation of the word "events" was not a determination of when a plaintiff's cause of *181 action accrued. In Walls, supra, which analyzed the prospective application of La. R.S. 23:1032 in a wrongful death case, the supreme court clearly stated that Cole could not be read to "require all longlatency occupational lung disease cases to be governed by the law in effect on the date the victim was exposed to the disease causing agent." Walls explained that Cole's application of the tortious exposures doctrine, "turned on [the] unique language" of the provision of law which it interpreted. As Walls declined to extend the Cole decision, we decline to extend it to the present matter.
Even so, we agree that the relevant inquiry under these facts is whether or not Hogue's cause of action in tort "vested" prior to the inclusion of mesothelioma in the workers' compensation law in 1975. Of course, the general principle is that statutes enacted after the acquisition of a vested property right cannot be applied retroactively so as to divest the plaintiff of his cause of action without violating due process guarantees. Cole, supra.
In this inquiry, we find the language of Cole instructive. Cole distinguished traditional personal injury cases (in which the damage results from a single traumatic injury) from long-latency occupational diseases which are characterized by lengthy latency periods, typically ranging a decade or two, in which the damage results from a continuous process. The court acknowledged that the "lengthy latency period renders efforts to pinpoint the date on which the disease was contracted virtually impossible, medically and legally," and that this fact "renders determining the date on which a plaintiff's cause of action accrued a herculean task." The Cole court discussed three stages in the development of a long-latency occupational disease which we consider relevant to our determination of the accrual of Hogue's cause of action. Those include the substantial, continuous tortious exposure theory, the contraction theory and the manifestation of injury theory. We are faced with the task of ascertaining whether the tortious exposure theory applies to regulate the determination of when Hogue's tort cause of action vested.
In its limited and specific holding, Cole determined that "substantial injury producing exposures ...." qualified as "events" under the comparative fault law. This has been coined the "tortious exposures" doctrine. Walls, supra.
Under Louisiana law, a cause of action accrues when a party has a right to sue. Cole, supra n. 15, at 1086. For a negligence cause of action to accrue, three elements are required: fault, causation and damages. The sine qua non for the accrual of a cause of action is damages. Owens v. Martin, 449 So.2d 448 (La.1984).
We understand the unique nature of asbestos cases and the empirical evidence which suggests that continuous, significant exposure has a "high probability of causing damage." Cole, supra. We also recognize the argument that a plaintiff may begin to sustain tissue damage shortly after the initial inhalation of asbestos fibers. See, Cole, supra at 1084 (Dennis, J., concurring). Nevertheless, while the supreme court in Cole acknowledged the difficulties attendant to pinpointing when damages occur in long-latency diseases, the court nowhere suspended the application of the general law for determining the accrual of a cause of action in a long-latency disease case. Until the Louisiana Supreme Court directs otherwise, we are, therefore, bound to apply that general analysis, i.e., fault, causation and damage, and decline to embark upon an across-the-board policy determination that in every case the substantial exposure theory dictates *182 when a plaintiff's cause of action accrues.
In the context of disease, exposure is commonly understood to mean, "to leave in a place unprotected" or to "subject to." Webster's New Universal Unabridged Dictionary 647 (2nd ed.1983). When viewed in its commonly understood meaning, therefore, it is clear that exposure in no way includes the concept of damage. Likewise, in the context of asbestos, logic dictates that exposure does not automatically or necessarily equate to or lead to damage. Certainly, it would be illogical to conclude that every individual who has been "exposed" to asbestos or silica dust will experience injury. In that instance, it would likewise be unreasonable to conclude that a tort cause of action accrued when the individual was exposed to the injury-causing substance. Under a very common sense and logical approach, therefore, we conclude the exposure theory fails to include the element of damage necessary for the accrual of a cause of action in negligence. Accordingly, we decline to apply the substantial exposure theory to the determination of the accrual of Hogue's tort action.
We find it unnecessary to resolve which of the remaining theories, i.e., contraction or manifestation, specifically applies to the facts of this case, because under either theory, we find that Hogue has failed to raise an issue of material fact. Because Hogue urges the application of the pre 1975 workers' compensation law to this action, he has the burden of proving that his tort cause of action accrued prior to 1975.
The manifestation theory provides the cause of action accrues when the disease becomes obvious, apparent or manifests itself. In support of the motion for summary judgment, defendants included a copy of the medical report which diagnosed Hogue with mesothelioma in December of 1998. That report clearly shows Hogue began experiencing symptoms in July of 1998, when he ceased working. We find this evidence sufficient to point out the absence of factual support for Hogue's claim that he contracted mesothelioma prior to 1975. Clearly, under the manifestation theory, Hogue has failed to present factual support that his cause of action vested prior to 1975 because he has presented no evidence to refute the fact that the cancer was not diagnosed or manifested until 1998. Under those circumstances, workers' compensation is Hogue's exclusive remedy.
Under the contraction theory, injury occurs when "the cumulation of exposure reache[s] the point where the plaintiff contracts the disease." Cole, supra, quoting Faciane v. Southern Shipbuilding Corp., 446 So.2d 770 (La.App. 4th Cir. 1984), n. 54, at 1086. In Faciane, supra, the court further depicted the contraction theory as it related to silicosis in this way:
It seems implicit from much of the medical evidence that once silica dust has so damaged and maimed the body that the fibrogenic effects of silica inhalation will progress independent of further exposure, a disease has been contracted. It is at this point and not before that the consequences of exposure to silica becomes inevitable and in our opinion, actionable. The victim's body has been injured just as surely as if it had been hit by a truck.
We also find defendants' evidence in support of the motion for summary judgment, i.e., the medical report which shows that Hogue began experiencing symptoms in July of 1998, sufficient to point out the absence of factual support for Hogue's claim that he contracted mesothelioma prior to 1975.
*183 In opposition to the summary judgment, Hogue presented employment records and a portion of his deposition in which he discussed his job duties and exposure to asbestos. He also included the affidavit (dated March 17, 2000) of Dr. Victor Roggli ("Dr.Roggli"), a board-certified pathologist who reviewed the medical records and deposition of Hogue. Therein, Dr. Roggli concluded that Hogue had pleural mesothelioma, caused by asbestos exposure. Generally, Dr. Roggli stated that mesothelioma caused by asbestos exposure "typically requires 20 years between the first exposure and its appearance upon diagnosis," that "each exposure is cumulative in its effect," and that Hogue's exposures "satisfy the requirements in order to relate this exposure to his diagnosis." [Emphasis added.]
It is apparent to us Hogue has hinged his claim to the application of pre 1975 law on the substantial exposure theory which we have rejected as the standard for determining the accrual of a cause of action. Accordingly, his pleadings allege only that excessive exposure to asbestos caused him injuries; he has nowhere alleged he contracted the mesothelioma prior to his 1998 symptoms and diagnosis. Even were we to conclude that Hogue has alleged sufficient facts in his pleadings to support a claim under the contraction theory, he cannot rest on these allegations alone. Unfortunately, the evidence offered by Hogue in opposition to the summary judgment is insufficient to establish that he will be able to satisfy his burden of proving that he contracted mesothelioma prior to July of 1998. Not only did Dr. Roggli fail to personally examine Hogue, but he never indicated he sustained injury, latent or otherwise, before 1998. His generic conclusions appear to relate the ultimate diagnosis to exposure but fail to establish even a hint of specific injury to Hogue prior to 1975. Cf. Cole, supra at 1084 (Dennis, J., concurring). See, Brown v. R.J. Reynolds Tobacco Co., 52 F.3d 524 (5th Cir.1995).
For the foregoing reasons, we find no error in the trial court's summary judgment insofar as it dismisses the negligence claims based upon La. R.S. 23:1031.1 and La. R.S. 23:1032.

Intentional Torts
We do note that neither defendants' motion for summary judgment nor their memorandum in support thereof raise or address the issue of Hogue's intentional tort claims. Nor does the transcript reflect an oral amendment to that motion or a discussion of these claims at the hearing on the motion for summary judgment.
Of course, La. R.S. 23:1032(B) states as follows:
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
This provision excludes intentional acts from the general immunity provisions of La. R.S. 23:1032. Walls, supra. Therefore, defendants could not properly raise the issue of Hogue's intentional tort claims via the general immunity provisions of La. R .S. 23:1032. As a general rule, courts of appeal will not consider issues raised for the first time on appeal. Gladney v. Sneed, 32,107 (La. App.2d Cir.08/18/99), 742 So.2d 642, writ denied, 99-2930 (La.01/14/00), 753 So.2d 215. Accordingly, insofar as this issue was not before the trial court and the summary judgment disposed of "all tort actions of the plaintiff," the trial court was in error. The intentional tort claims remain pending before the trial court. It is necessary that we amend the judgment to dismiss only Hogue's negligence tort claims against IP *184 and AC. In all other respects the judgment is affirmed.
JUDGMENT AMENDED, AND, AS AMENDED, AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, CARAWAY, and KOSTELKA, JJ.
Rehearing denied.
BROWN, J., would grant rehearing.
NOTES
[1] Hogue filed the Second Supplemental and Amending Petition individually without naming his wife, Betty, as a co-plaintiff.
[2] Because Hogue argues solely that his cause of action vested prior to 1975, our resolution of that issue will likewise dispose of his argument relating to the application of La. R.S. 23:1032. Accordingly, we do not separately address the latter issue in this opinion.
[3] The parties do not apparently dispute the fact that mesothelioma was not a covered occupational disease prior to 1975. See, Johnson v. Ashland Oil, Inc., 96-0323 (La. App. 1st Cir.12/20/96), 684 So.2d 1156, writ denied, 97-0206 (La.03/14/97), 690 So.2d 37.