841 So.2d 742 (2003)
Charles W. POWELL, et al.
v.
Dr. Neill WEAVER
No. 2001-CC-2937.
Supreme Court of Louisiana.
February 7, 2003.
Denied.
VICTORY and TRAYLOR, JJ., would grant the writ.
WEIMER, J., concurs in denial and assigns reasons.
WEIMER, J., concurring.
I concur in the denial of the defendant's writ application and write separately to address my reasons for doing so because I was not on the panel that rendered the decision in Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137.
Over twenty years ago, it was noted:
The growth of industrial sophistication and the enormous strides in medicine over the last fifty years have yielded countless benefits to ease the burdens of daily living. At the same time, however, exposure to the by-products of these triumphs has planted in the bodies of untold numbers of people the seeds of insidious disease that may not become evident for decades.
Comment, Liability Insurance for Insidious Disease: Who Picks Up the Tab?, 48 Fordham L.Rev. 657 (1980). Actions for damages caused by insidious disease[1] have confronted the legal system with issues as complex and far-reaching as the *743 technology giving rise to the diseases. Comment, Asbestosis: Who Will Pay the Plaintiff?, 57 Tul.L.Rev. 1491 (1983). Many of those issues remain vexing today. The factual predicates arising from insidious disease cases are simply different from those that traditional tort doctrines were designed to accommodate, and, accordingly, the courts have struggled in their efforts to create a framework that is workable and fair to both plaintiffs and defendants.
One of the most perplexing issues that arises in insidious disease cases involves the determination of when a cause of action for tort liability accrues, since insidious diseases, such as asbestosis, are typically characterized by a lengthy latency period, and consequently, a lengthy temporal separation between the alleged tortious conduct and the appearance of injury.[2] In Louisiana, three possible approaches for determining when a cause of action accrues for purposes of Civil Code article 2315 liability have been identified: (1) the manifestation approach, which is the latest in time and looks to when the disease sued upon first becomes symptomatic or is diagnosed; (2) the significant exposure approach, which is the earliest in time and looks to when the plaintiff inhaled sufficient asbestos fibers such that the fibrogenic effect of this inhalation will progress to the disease independently of further exposure; and (3) the contraction approach, which attempts to pinpoint when the disease itself first arose in the body. This latter approach was rejected by this court as unworkable in Cole v. Celotex Corp., 599 So.2d 1058, 1076 n. 54 (La.1992) ("The contraction theory, however, is fraught with difficulties: `[t]he problem with this approach is that it is extremely difficult to accurately fix the point in time at which the disease is contracted.' Faciane [v. Southern Shipbuilding Corp.], 446 So.2d [770, (La.App. 4 Cir.1984) ] at 773. Due to these inherent difficulties, we have declined the invitation made by the parties and amici in this case to invoke this theory."). The second approach is the one adopted by the majority in Austin, supra, while the first approach is that advocated by the dissenting justices in that decision. None of these approaches are problem-free; some unfavorable consequences will flow from whichever approach is ultimately followed. Nevertheless, after careful study of the well reasoned and thought-provoking majority and dissenting opinions in Austin, I believe the approach that presents the fewest significant problems, is most consistent with our law and jurisprudence, and represents the most equitable approach to the problem created by insidious disease cases is the substantial exposure theory adopted by the Austin majority.
Judicial experience instructs that there are at least three areas in which the determination of the accrual date of a cause of action in a long latency occupational disease case typically becomes relevantin connection with prescription, with the applicable trigger for insurance coverage, and with the determination of what law applies. In Cole v. Celotex Corp., supra, this court addressed the latter two areas, adopting the significant exposure theory for purposes of determining whether preor post-comparative fault law applied in an action by former refinery workers who had been injured by long-term exposure to asbestos and for establishing the applicable trigger for insurance coverage. Cole was decided over ten years ago. Since its publication the decision has been embraced by the courts of appeal which have uniformly[3] *744 held that the substantial exposure test is the appropriate means of determining the date of accrual of a cause of action resulting from long-term exposure to a latent disease producing substance such as asbestos or tobacco. See Abadie v. Metropolitan Life Ins. Co., 00-344 (La.App. 5 Cir. 3/28/01), 784 So.2d 46, writs denied, 01-1543, 804 So.2d 643, 01-1544, 804 So.2d 643, 01-1629 (La.12/14/01), 804 So.2d 643; Callaway v. Anco Insulation, Inc., 98-0397 (La.App. 4 Cir. 3/25/98), 714 So.2d 730, 731, writ denied, 98-1034 (La.11/19/99), 749 So.2d 666; Pitre v. GAF Corp., 97-1024 (La.App. 1 Cir. 12/29/97), 705 So.2d 1149, 1156; Young v. E.D. Bullard Co., 97-657 (La.App. 5 Cir. 11/25/97), 703 So.2d 783, 784-785, writ denied, 98-0457 (La.11/19/99), 749 So.2d 665; Thomas v. Armstrong World Industries, Inc., 95-2222 (La.App. 1 Cir. 6/28/96), 676 So.2d 1185, 1186, writ denied, 96-1965 (La.11/1/96), 681 So.2d 1272; Faciane v. Southern Shipbuilding Corporation, 446 So.2d 770 (La.App. 4 Cir.1984); Quick v. Murphy Oil Co., 446 So.2d 775 (La.App. 4 Cir.), writ denied, 447 So.2d 1074 (La. 1984). Notably, in the more than ten years since its issuance, there has been no legislative response to the holding in Cole.
The substantial exposure approach of Austin is consistent with our holdings in Cole, and with the jurisprudence of the intermediate appellate courts having occasion to address the issue since Cole. It is also consistent with the prevailing rule in the United States Fifth Circuit Court of Appeal insofar as the issue of when insurance coverage is triggered. See Porter v. American Optical Corp., 641 F.2d 1128 (5th Cir.), cert denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), finding, pursuant to Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this approach to be consistent with the law of Louisiana.
The four to three vote of this court in Austin is reflective of the national debate that rages decades after insidious disease cases first came to the forefront of our judicial system and of the need for legislative action on a national level to address the problems created by the influx of these cases. In the absence of such action, Austin's substantial exposure approach to insidious disease cases represents what is hoped to be the most equitable approach and the approach most consistent with the laws and jurisprudence of this State.
That being said, however, it must be noted that Austin does not represent the last word on the continued viability of executive officer tort suits in Louisiana. At present there exists a conflict in the courts of appeal as to whether asbestos is both an oxygen compound and a metal compound so as to render asbestos-related disease a covered occupational disease under the worker's compensation law and the sole remedy of employees suffering from such diseases. See and compare Brunet v. Avondale Industries, Inc., 99-1354 (La. App. 5 Cir. 12/5/00), 772 So.2d 974, writ not considered, 01-0171 (La.3/23/01), 787 So.2d 1006, and Gautreaux v. Rheem Manufacturing Company, 96-2193 (La. App. 4 Cir. 12/27/96), 694 So.2d 977, writ denied, 97-0222 (La.3/14/97), 690 So.2d 39. The final word cannot be written on this chapter until the conflict between Brunet and Gautreaux is resolved.
NOTES
[1] An insidious disease is one that progresses with few or no symptoms to indicate its seriousness. STEDMAN'S MEDICAL DICTIONARY, 711 (4th unabr. lawyers' ed.1976). "In 1930, Dr. Merewether, a pioneer in the area of occupational diseases, demonstrated the particular aptness of this term as a description of the pathogenesis of asbestosis. `This disease, insidious in its onset, stealthily advances with but faint warnings of its progress: inexorably it cripples the essential tissues of the lungs, yet for a considerable period causes almost no inconvenience to the worker. As time goes on, however, the lungs find more and more difficulty in re-aerating the blood; and breathing is quickened on slight exertion. Still the worker is able to remain at work, but is aware of his undue shortness of breath on extra effort. Usually, however, he ascribes it to causes other than the dust he is inhaling.

`As the disease progresses, if no acute illness has caused a fatal termination, a stage is reached when the lungs can do little more than maintain life; and the shortness of breath is extreme. Even in its terminal stages, the disease, deceitful to the last, may masquerade as chronic bronchitis, pulmonary tuberculosis, bronchopneumonia, or the like.'" Comment, Liability Insurance for Insidious Disease: Who Picks Up the Tab?, 48 Fordham L.Rev. 657 n. 1, quoting Merewether, The Occurrence of Pulmonary Fibrosis and Other Pulmonary Affections in Asbestos Workers, 12 J. Indus. Hygiene 198, 201-02 (1930).
[2] Cole v. Celotex Corp., 599 So.2d 1058, 1065 (La.1992).
[3] The sole exception is the court of appeal decision in Austin v. Abney Mills, Inc., 34,495 (La.App. 2 Cir. 4/04/01), 785 So.2d 177, which was subsequently overturned by this court. Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137.