MARC E. JOHNSON, Judge.
laThis is an individual lawsuit by John Oleszkowicz for damages he allegedly sustained as a result of exposure to naturally occurring radioactive material (NORM) while working at the Intracoastal Tubular Services, Inc. (ITCO) pipeyard in Harvey, Louisiana. Both Mr. Oleszkowicz and defendant, Exxon Mobil Corp. (Exxon Mobil), appeal the jury verdict, as well as other trial court rulings. For the reasons that follow, we affirm in part, amend in part, and reverse in part.

FACTS & PROCEDURAL HISTORY

This case is rooted in extensive litigation that began in 2001, when several lawsuits and eventually a class action, all of which became known as the In re: Harvey TERM litigation,[1] were filed in Civil District Court for the Parish of Orleans against several defendants, including Exxon Mobil, for personal injury damages allegedly caused by exposure to NORM and other hazardous radioactive materials at various pipeyards in the area. In December 2002, Warren Lester and hundreds of other plaintiffs filed another lawsuit {Lester CDC[2]) against Exxon Mobil and others in Civil District Court for the Parish of Orleans on the same grounds.
During the pendency of the litigation, the Civil District Court for the Parish of Orleans determined, without a determina *1278 tion of class status, that the plaintiffs would be tried in flights according to the pipeline location. In March 2006, a flight of 24 plaintiffs, which included Mr. Olesz-kowicz, whose alleged exposure | .¡occurred at the ITCO pipeyard in Harvey, Louisiana, were transferred to the 24th Judicial District Court on an exception of improper venue. In January 2010,16 of those plaintiffs, including Mr. Oleszkowicz, proceeded to trial. The jury returned a verdict in favor of plaintiffs against Exxon Mobil and awarded damages to each plaintiff for increased risk of cancer. Mr. Oleszkowicz was individually awarded $115,000 in damages. The jury further found that Exxon Mobil did not engage in wanton or reckless conduct in the storage, handling or transportation of hazardous or toxic substance and, thus, did not award punitive damages. The jury’s verdict was affirmed by this Court on appeal. Lester v. Exxon Mobil Corp., 10-743 (La.App. 5 Cir. 5/31/12); 102 So.3d 148, writ denied, 12-2202 (La.4/19/13); 111 So.3d 1028 (Lester II).
On December 8, 2010, Mr. Oleszkowicz filed the present lawsuit against Exxon Mobil and other defendants alleging he worked at ITCO from 1979 through 1986 and was exposed to NORM. He claimed that as a result of his exposure, he contracted prostate cancer. Mr. Oleszkowicz asserted that Exxon Mobil knew of the danger presented by NORM but failed to warn him of the danger. He alleged Exxon Mobil was strictly liable for all damages caused by NORM because it engaged in an ultra-hazardous activity, and it was liable for its negligence that resulted in his exposure. Mr. Oleszkowicz sought both compensatory and punitive damages.
A jury trial began on March 5, 2012. After a ten-day trial, the jury returned a verdict in favor of Mr. Oleszkowicz and awarded him $850,000 in compensatory damages after finding Exxon Mobil was negligent in its lack of knowledge of the NORM and its failure to prevent exposure to Mr. Oleszkowicz. The jury apportioned 80% fault to Exxon Mobil and 20% fault to Mr. Oleszkowicz. The Injury also awarded $10 million in punitive damages after finding Exxon Mobil’s conduct was wanton and reckless. Both parties appeal.

EXXON MOBIL'S APPEAL

ISSUES

Exxon Mobil appeals both the award of compensatory damages and the award of punitive damages. In connection with the award of compensatory damages, Exxon Mobil alleges three issues relating to trial court rulings that it claims are reversible errors: first, it claims the trial court erroneously allowed Mr. Oleszkowicz to refer to the deposition testimony of Dr. David Schottenfeld during closing arguments even though the deposition was never introduced into evidence; second, Exxon Mobil asserts the trial court failed to notify the parties of a jury request and then proceeded to give the jury only those exhibits that favored Mr. Oleszkowicz; and, third, it claims the trial court erred in giving a jury instruction relating to an inapplicable federal regulation. Exxon Mobil also claims the evidence does not support the jury’s finding that NORM caused Plaintiffs cancer.
Regarding the award of punitive damages, Exxon Mobil raises four issues. First, it argues the trial court erred in denying its exception of res judicata because Mr. Oleszkowicz’s claim for punitive damages was previously denied in Lester II after the jury specifically found that Exxon Mobil did not engage in wanton or reckless misconduct. Exxon Mobil contends Plaintiff was precluded from pursuing the same issue of punitive damages in the instant lawsuit. Second, Exxon Mobil maintains Plaintiff has no claim for puni *1279 tive damages because his cause of action did not accrue during the effective period of La. C.C. art. 2B15.3. Third, it claims the punitive damage award is impermissi-bly based on harm to nonparties. And, fourth, Exxon Mobil asserts the $10 million award, which is twelve times the award for compensatory damages, is unconstitutionally excessive.
| cJjAW & ANALYSIS

Reference to Evidence not Admitted

Exxon Mobil argues the trial court committed reversible error by allowing Plaintiff’s counsel, during closing argument, to refer to the deposition testimony of Dr. David Schottenfeld that was never introduced into evidence. Exxon Mobil contends the improper reference falsely suggested that Dr. Schottenfeld, who was an expert retained by Exxon Mobil in another case, agreed with Plaintiffs experts that the Thorotrast study supported a finding of causation.
“[T]he propriety of argument in a civil jury case must be determined in light of the facts of the particular matter.” Temple v. Liberty Mutual Insurance Company, 316 So.2d 783, 793 (La.App. 1st Cir.1975), reversed in part on other grounds, 330 So.2d 891 (La.1976). Counsel should limit their arguments to the evidence admitted and the inferences that may be properly drawn from it. Cooper v. United Southern Assurance Co., 97-250 (La.App. 1 Cir. 9/9/98); 718 So.2d 1029, 1038. Trial counsel has great latitude when arguing before a civil jury, but such latitude is subject to control by the trial judge, who has a duty to confine argument to evidence which has been properly admitted. Karagiannopoulos v. State Farm Fire & Casualty Co., 94-1048 (La.App. 5 Cir. 11/10/99); 752 So.2d 202, 209, writ denied, 99-2866 (La.12/10/99); 752 So.2d 165.
In this case, Exxon Mobil moved for a mistrial on the basis of Plaintiffs counsel’s improper and prejudicial closing argument; however, the trial judge denied Exxon Mobil’s request. The misconduct of an attorney during trial may constitute grounds for a new trial. Misconduct includes making statements of matters not in evidence. Washington v. Lake City Beverage, Inc., 352 So.2d 717, 720 (La.App. 3rd Cir.1977), writ denied, 354 So.2d 1050 (La.1978). However, a 17new trial is only justified where the statements produce a prejudicial effect that is deemed ineradicable despite judicial instruction to disregard the statements. Id.
The trial judge is in a better position than an appellate court to determine the possible prejudicial effects resulting from counsel’s argument before a jury and, thus, his ruling is accorded much weight. Temple, 330 So.2d at 894. Unless the contrary is clearly shown, rulings on allegedly prejudicial improper argument of counsel are presumed to be within the trial court’s great discretion and will not be reversed absent an abuse of such discretion. Henderson v. Louisiana Downs, Inc., 566 So.2d 1059, 1063 (La.App. 2nd Cir.1990), unit denied, 569 So.2d 984 (La.1990).
About halfway through Plaintiffs counsel’s closing argument, he referred to the Thorotrast study, which had been admitted into evidence. He then referenced Dr. Schottenfeld as being involved in the Thorotrast study. Counsel stated in pertinent part:
This is Dr. David Schottenfeld. He’s another expert that’s been hired in these cases by Exxon.... I took Dr. Schotten-feld’s deposition. And I talked to Dr. Schottenfeld about this study.... I *1280 wanted to see what was going on with this study that he was involved with, this is the Thorotrast study, the Travis study that he was involved with.... I’ve deposed him. I’ve asked him this: “Does this study relate to this type of exposure?” The answer was, “Yes, they do.”
Dr. Sehottenfeld never testified at trial and his deposition testimony was never introduced into evidence. Thus, Plaintiffs counsel’s statements regarding Dr. Schot-tenfeld were improper. However, we find the fact that the statement was briefly mentioned in counsel’s closing argument does not constitute reversible error.
The record reflects counsel’s closing argument was 41 pages, of which there was only one page that referenced Dr. Schot-tenfeld. The trial judge instructed the jury that statements by any attorney in the ease are not evidence and that the jury’s ^decisions regarding the case must be based on the evidence. We find these instructions served to counteract any possible adverse effects of Plaintiffs counsel’s brief statement regarding Dr. Schotten-feld. Further, we find the overall evidence supported the jury’s final judgment and, thus, counsel’s one-time reference was not of such prejudicial character so as to warrant reversal.

Trial Court’s Response to Jury Request

In this assignment of error, Exxon Mobil claims the trial court violated La. C.C.P. art. 1795 when it failed to notify the parties of the jury’s request to examine certain evidence relating to causation. Exxon Mobil further contends the jury was only given evidence favorable to Plaintiff in response to its request, which tainted the jury deliberations and the verdict.
Louisiana Code of Civil Procedure Article 1795 provides:
A. If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, they shall be conducted to the courtroom.
B. After giving notice to the parties, the court may have the requested testimony read to the jury and may permit the jury to examine the requested materials admitted into evidence.
Under Article 1795, the jury should be brought into the courtroom when it has requested a review of evidence and the parties should be notified. However, the trial judge has discretion in allowing the examination of evidence.
The trial judge explained that the jury made a request to get the exhibits, which he believed was made through the bailiff. According to the trial judge, the clerk was told to give the jury all the exhibits except depositions, and those that would be in the form of testimony. The trial judge believed the jury received all the requested exhibits because there were no additional requests for exhibits during deliberations.
|gWe do not find the failure of the trial judge to bring the jury into the courtroom upon their request to review certain evidence and the trial judge’s failure to notify the parties of the jury’s request to be reversible error. Even if the jurors were brought into the courtroom and the parties had been notified of the jury’s request to review evidence, Subsection B of Article 1795 allows the trial court discretion in allowing review of the requested evidence. Exxon Mobil has failed to show how the trial court’s decision to allow the jury to review the exhibits would have been any different if the jury had been brought into the courtroom or had the parties been notified of the request. Additionally, Exxon Mobil has not shown how it was prejudiced in the trial court’s decision to allow the jury to review the exhibits. See Detraz v. Lee, 04-988 (La.App. 3 Cir. 4/11/07); 955 So.2d 1287. Under La. C.C.P. art. 1794(B), the jury is allowed to take into *1281 the jury room during deliberations any object or writing received in evidence, except depositions.
Exxon Mobil further contends the jury was not given all the requested evidence. Specifically, Exxon Mobil asserts the jury was only given evidence favorable to Plaintiff. In support of its argument, it relies on the handwritten affidavits of two jurors, David Stanford and Kenya Jackson, executed on March 22 and 24, 2012, approximately one week after the jury verdict. In his affidavit, Mr. Stanford stated that the trial judge told them that they could request materials, pamphlets or brochures used and submitted as evidence if needed to help them obtain a clear understanding of what was discussed. Mr. Stanford explained that the jury foreman wrote down the materials the jury wanted to review and gave the note to the bailiff. Thereafter, the secretary returned with the materials. Mr. Stanford claimed 110the secretary indicated she could not get all the requested materials, and he noticed there was little material relating to Exxon Mobil’s evidence. He further claimed that without Exxon Mobil’s pamphlets or brochures, he did not feel he could make “an honest decision that would be fair to both parties.”
In Ms. Jackson’s affidavit, she stated the jury requested “a study that will help us to understand a study of radiation thats [sic] inside the body.” She claimed the secretary was unable to bring the item and believed the judge told the secretary that the “item was not present on the script.”
Louisiana Code of Evidence Article 606(B) provides:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon his or any other juror’s mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror ...
The purpose of Article 606 is to protect the sanctity and privacy of jury deliberations. If a juror could impeach the jury’s verdict after being discharged and mingling with the public, it would invite tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under the sanction of oath. LeBlanc v. Western Heritage Ins. Co., 02-788 (La.App. 5 Cir. 12/30/02); 837 So.2d 81, 86, writ denied, 03-320 (La.4/4/03); 840 So.2d 1221. The affidavit of a juror cannot be admitted to show anything relating to what passed in the jury room during the investigation of the cause or the effect of a colloquy between the court and a juror. Washington v. Lake City Beverage, Inc., 352 So.2d 717, 721 (La.App. 3rd Cir.1977), writ denied, 354 So.2d 1050 (La.1978).
InWe find the affidavits of Mr. Stanford and Ms. Jackson seek to improperly impeach the jury verdict by testifying as to what passed in the jury room during the investigation of the cause. Therefore, we find these juror affidavits cannot be considered.
Additionally, Exxon Mobil does not claim outside influence improperly impacted the jury so as to allow the introduction of juror testimony in this case. The jury heard all of the evidence that was presented by both sides during trial. The jurors were allowed to take notes and refer to these notes during deliberations. There is no indication the jury failed to follow the trial court’s instruction to consider all the *1282 evidence presented. Further, a review of the record supports the jury’s verdict. Thus, we find no merit to Exxon Mobil’s suggestion that the jury did not have or consider all the evidence presented.

Jury Instructions

Exxon Mobil next challenges one of the jury instructions given by the trial judge. Specifically, Exxon Mobil claims the jury instruction relating to expert testimony on dose reconstruction was erroneous because it was based on an inapplicable federal regulation. Exxon Mobil contends the erroneous jury instruction lowered the required burden of proof.
The trial court has a duty to instruct jurors on the law applicable to the cause submitted to them. La. C.C.P. art. 1792(B). Adequate jury instructions are those which fairly and reasonably point out the issues and provide correct principles of law for the jury to apply to those issues. Adams v. Rhodia, Inc., 07-2110 (La.5/21/08); 988 So.2d 798, 804. The trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable. Id.
|12Trial courts have broad discretion in formulating jury instructions and a jury verdict should not be reversed so long as the jury charges correctly state the substance of the law. Adams, 988 So.2d at 804. An appellate court must exercise great restraint before reversing a jury verdict because of erroneous jury instructions. Id.
Determining whether an erroneous jury instruction was given requires consideration of the targeted portion of the instruction in the context of the entire jury charge “to determine if the charges adequately provide the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its determination.” Wooley v. Lucksinger, 09-571 (La.4/1/11); 61 So.3d 507, 574. The question on appeal is whether the jury instruction misled the jury to such an extent that the jurors were preventing from dispensing justice. Id. In reviewing jury instructions for error, the manifest error standard of review applies unless the jury charges were so incorrect as to preclude the jury from reaching a verdict based on the law and facts. Adams, 983 So.2d at 805.
Generally, “the giving of an allegedly erroneous jury instruction will not constitute grounds for reversal unless the instruction is erroneous and the complaining party has been injured or prejudiced thereby.” Wooley, supra. Prejudice to the complaining party is not automatically assumed from the mere fact of an error. Rather, if an error is found, the reviewing court must compare the degree of the error with the adequacy of the jury instructions as a whole and the circumstances of the case. Id. Because the adequacy of jury instructions must be determined in light of the jury instructions as a whole, when a small portion of the instruction is isolated from the context and is erroneous, error is not necessarily prejudicial. Adams, 983 So.2d at 805.
|13In the present case, the jury was given the following instruction:
ExxonMobil admits that it did not inform the plaintiffs employer of the fact that used tubulars sent to ITCO for cleaning contained radioactive scale until March of 1987. Prior to that time, there was no record of the dose received by the ITCO workers. In order for the plaintiff to prove his case regarding dose, he has had to rely on a dose reconstruction expert. This expert has *1283 had to make assumptions about work conditions to reach his conclusions. The law acknowledges that assumptions may be made and relied upon when no precise dose records are available. The law requires that when assumptions must be made by the dose reconstruction expert, the assumptions that are made shall be most protective of the worker.
Exxon Mobil objected to the instruction claiming that it was based on an inapplicable section of the Code of Federal Regulation.[3] It also argued that the charge was confusing and that the trial court’s charge on expert testimony was sufficient.
Overall, in the 16 pages of jury instructions, we find the trial court clearly and properly instructed the jury on the Plaintiffs burden of proof. We do not find the jury instruction on dose reconstruction lowered the applicable burden of proof. During his testimony, Dr. Phillip Plato, Plaintiffs health physicist expert, detailed how he applied dose reconstruction and made certain assumptions relating to Plaintiffs dose exposure during the time period the dose exposure was not measured. The trial court subsequently instructed the jurors that they were to consider each expert opinion and give it such weight as they thought it deserved. The trial court told the jurors that if they decided the opinion of an expert witness was not based upon sufficient education and experience, or if they concluded the reasons given in support of the opinion were not sound, or that the opinion was 114outweighed by other evidence, they could disregard the expert’s opinion entirely. The trial court further instructed the jurors that they could substitute their own common sense and judgment in the place of an expert witness’ opinion.
Considering the jury charge as a whole in conjunction with the entire record, we find the jury charges in this case adequately provided the correct principles of law and did not mislead the jury to the extent that it was prevented from dispensing justice.

Causation

Exxon Mobil contends the evidence does not support the jury’s finding that NORM exposure caused Plaintiffs prostate cancer. It urges this Court to conduct a de novo review based on the above legal errors that it alleges impugned the fact-finding process. Alternatively, it argues that even under a manifest error review, the jury’s verdict must be reversed because the evidence does not support a causal connection between radiation exposure and prostate cancer. Exxon Mobil readily admits the issue of causation was dependent on the expert witnesses. However, it contends that unlike Plaintiffs expert witnesses, the testimony of its expert witnesses was based on scientific studies, which clearly showed there was no evidence of any association between radium exposure and prostate cancer.
Because we have not found any legal errors that would require us to conduct a de novo review, we apply the manifest error standard of review. See Evans v. *1284 Lungrin, 97-541 (La.2/6/98); 708 So.2d 731, 735.
Under the manifest error standard, a determination of fact is entitled to great deference on review. McGlothlin v. Christus St. Patrick Hospital, 10-2775 (La.7/1/11); 65 So.3d 1218, 1230. The Louisiana Supreme Court has explained:
[T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should notj^be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
Id. at 1230-31.
In order to find manifest error, an appellate court must find there is no reasonable factual basis for the jury’s conclusion and the finding must be clearly wrong. McGlothlin, 65 So.3d at 1231. The question is not whether the jury was right or wrong, but whether the jury’s factual conclusion was reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
As noted by the supreme court, reasonable persons frequently disagree regarding factual issues in a particular case. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. McGlothlin, supra. Additionally, where the factfinder’s determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. Adams v. Rhodia, Inc., 07-2110 (La.5/21/08); 983 So.2d 798, 807. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. Id.
Causation is a factual finding that should not be reversed on appeal absent manifest error. Detraz v. Lee, 05-1263 (La. 1/17/07); 950 So.2d 557, 561. The crucial issue in this case was whether Plaintiffs prostate cancer was caused by his exposure to NORM while working at the ITCO pipeyard. Both Exxon Mobil and Plaintiff presented expert witnesses on the issue of causation. Exxon Mobil claims that unlike its experts, Plaintiffs experts did not base their testimony on scientific studies. Exxon Mobil specifically cites studies from the International Agency for | UiResearch on Cancer (IARC) that its experts relied on to show there was no association between radium exposure and any type of cancer. However, Plaintiffs expert, Dr. Teresa Hayes, cited a 2009 study from the IARC that she testified confirmed the fact radiation can cause prostate cancer. The record shows each expert testified as to the basis for his or her opinions, and each expert was cross-examined at length in an attempt to cast doubt on his or her opinions. Upon review of the record in its entirety, we find the jury’s factual conclusion that Plaintiffs prostate cancer was caused by NORM exposure was reasonable and the jury acted within its discretion in accepting the testimony of Plaintiffs experts on the issue of causation. Thus, we cannot say the jury was manifestly erroneous in its factual findings.

Punitive Damages

a) Res Judicata
Exxon Mobil argues that the trial court erred in denying its exception of res *1285 judicata because Mr. Oleszkowiez’s claim for punitive damages was previously denied in Lester II after the jury specifically found that Exxon Mobil did not engage in wanton or reckless misconduct. Exxon Mobil contends Mr. Oleszkowiez is precluded from pursuing the same issue of punitive damages in the instant lawsuit.
Mr. Oleszkowiez responds that Exxon Mobil’s position throughout the first trial was that the plaintiffs could file a “new” lawsuit, with no discussion of any limitations, if any of them developed cancer in the future. Mr. Oleszkowiez claims that Exxon Mobil repeatedly made known to the jury in the first lawsuit through cross-examination of the plaintiffs that they could file a “new” lawsuit in the future. Exxon Mobil does not dispute this claim.
|17The doctrine of res judicata is found in La. R.S. 13:4281, and bars a subsequent action when the following elements are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause(s) of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause(s) of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. See Burguieres v. Pollingue, 02-1385 (La.2/25/03); 843 So.2d 1049, 1053.
The doctrine of res judicata is stricti juris, and any doubt concerning the application of res judicata must be resolved against its application. Bourgeois v. A.P. Green Industries, Inc. 09-753 (La.App. 5 Cir. 3/23/10); 39 So.3d 654, 657, unit denied, 10-923 (La.6/25/10); 38 So.3d 341. The res judicata effect of a prior judgment is a question of law that is reviewed de novo. Morales v. Parish of Jefferson, 10-273 (La.App. 5 Cir. 11/9/10); 54 So.3d 669, 672.
Louisiana Revised Statute 13:4232(A) provides three exceptions to res judicata: (1) when exceptional circumstances justify relief from the res judicata effect of the judgment; (2) when the judgment dismissed the first action without prejudice; or (3) when the judgment reserved the right of the plaintiff to bring another action. While neither the second nor third exceptions apply in this case,[4] we find exceptional circumstances exist that justify relief from the res judicata doctrine.
The exceptional circumstances exception allows the court in its discretion on a case by case basis to balance the principle of res judicata with the interests of justice. Arwood v. J.P. & Sons, Inc., 99-1146 (La.App. 5 Cir. 2/29/00); 759 So.2d 848, 850. The exceptional circumstances exception is designed to protect those drawn into error by an awkward factual or legal scenario. Spear v. Prudential 18Property and Casualty Ins. Co., 98-1663 (La.App. 4 Cir. 1/13/99); 727 So.2d 640, 642. Convoluted factual or legal scenarios could qualify as exceptional circumstances, which justify the application of this exception. Brouillard v. Aetna Casualty & Surety Co., 94-1559 (La.App. 3 Cir. 5/10/95); 657 So.2d 231, 233.
We find that the complexity of and convoluted circumstances involved in the instant case justify imposition of the exception to res judicata contained in La. R.S. 13:4232(A)(1). Thus, we find the trial court’s denial of Exxon Mobil’s exception of res judicata on the issue of punitive damages was proper.
*1286 b) Applicability of La. C.C. art. 2315.3
Exxon Mobil contends that Plaintiff is not entitled to punitive damages under La. C.C. art. 2315.3 because his claim did not accrue during the effective dates of the Article. Specifically, Exxon Mobil contends Plaintiffs “substantial exposure” to NORM occurred before the Article became effective and his damages occurred 14 years after the Article was repealed.
Plaintiff worked at the ITCO pipeyard from 1979 through April 1986, and was diagnosed with cancer in 2010. Former La. C.C. art. 2315.3, which allowed for the recovery of punitive damages in certain cases involving hazardous substances, was enacted in 1984 and repealed in 1996.[5] Thus, Plaintiff suffered radiation exposure for 19 months after the effective date of the law allowing for punitive damages.
In Bulot v. Intracoastal Tubular Services, Inc., 00-2161 (La.2/9/01); 778 So.2d 583; 584, the supreme court recognized that a plaintiff has a cause of action for punitive damages under La. C.C. art. 2315.3 when his damages resulted from [ 19exposure that occurred after the effective date of the article. While the supreme court declined to express an opinion as to whether a plaintiff could recover punitive damages for pre-1984 exposure, it has stated that there is “a degree of unfairness ... whenever the law imposes additional burdens based on conduct that occurred in the past.” Landry v. Avondale Industries, Inc., 03-719 (La.12/3/03); 864 So.2d 117, 124, n. 3. Under this guidance, we find Plaintiff is entitled to recover punitive damages for the time he was exposed to NORM after the effective date of Article 2315.3.
We find the eases relied on by Exxon Mobil are distinguishable from the present case. In Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02); 824 So.2d 1137, the supreme court was faced with the issue of whether the defendants-employers were entitled to summary judgment on the issue of tort immunity. The plaintiff filed a tort suit against his employers claiming he had contracted mesothelioma from asbestos exposure after working for the two employers between 1955 and 1998. The supreme court found the defendants-employers were not entitled to summary judgment because they failed to carry their burden of proving the plaintiffs cause of action arose only after the 1975 enactment of the statute that provided tort immunity for the occupational disease of mesothelioma. Id. at 1155.
In Austin, the supreme court was concerned with whether the plaintiff had a vested right in a tort action and whether the 1975 enactment of statutory immunity impermissibly divested the plaintiff of any vested right he may have had. Unlike the present case, the Austin court was not faced with the enactment of a law that created a new cause of action for punitive damages.
In Anderson v. Avondale Industries, Inc., 00-2799 (La.10/16/01); 798 So.2d 93, the supreme court faced the issue of whether Article 2315.3 applied to a wrongful death action where the cause of action for wrongful death arose after the 12nenactment of the Article, but the conduct giving rise to the damages, specifically *1287 plaintiff’s exposure to asbestos, occurred prior to the enactment of the Article. In Anderson, the plaintiff worked at Avondale from 1968 to 1980. He was diagnosed with lung cancer in 1994. The supreme court ultimately determined that Article 2815.3 did not apply because application of the law to evaluate the conditions of the legality of the defendant’s past conduct resulted in the impermissible retroactive application of the law. Id. at 102-03.
Unlike Anderson, Plaintiff was still working and being exposed to NORM at the time Article 2315.3 was enacted. The evidence shows that radiation exposure has a cumulative effect: the more exposure, the greater the risk. Thus, Plaintiff suffered damaging exposure, caused by Exxon Mobil’s conduct, after the effective date of Article 2315.3. In Bulat, 778 So.2d at 584, the supreme court recognized that if a plaintiff suffers damage from post-1984 exposure, the retroactivity of Article 2315.3 is not implicated.
Having determined Plaintiff is only entitled to recover punitive damages for the time he was exposed to NORM after the effective date of Article 2315.3, we necessarily reduce the jury’s punitive damage award. Plaintiff worked at the pipeyard for 6.75 years and was awarded $10 million in punitive damages, or an average of $1,481,481.00 for each year he worked and was exposed to NORM. He worked for 1.6 years after Article 2315.3 was enacted. Thus, we find Plaintiff is entitled to $2,370,370.00 in punitive damages. Accordingly, we amend the jury’s punitive damage award and reduce it to $2,370,370.00.
e) Harm to Others as Basis for Punitive Damages
Exxon Mobil contends the trial court erred in refusing to instruct the jury that it could not base any punitive damage award on harm to nonparties in violation of Philip Morris USA v. Williams, 549 U.S. 346, 127 S.Ct. 1057, 166 21L.Ed.2d 940 (2007). As such, it asserts the punitive damage award must be stricken.
In awarding punitive damages, the trier of fact may consider the following factors: (1) the nature and extent of the harm to the plaintiff; (2) the reprehensibility of the defendant’s conduct; (3) the wealth or financial position of the defendant; (4) the imposition of punishment on the defendant; and, (5) the deterrent effect. Grefer v. Alpha Technical, 02-1237 (La.App. 4 Cir. 8/8/07); 965 So.2d 511, 517, writ denied, 07-1800 (La.11/16/07), 967 So.2d 523.
In Philip Morris, 549 U.S. at 356-57, 127 S.Ct. at 1065, the United States Supreme Court specifically held that punitive damages may not punish a defendant for injury that it inflicts upon nonparties. However, the Supreme Court recognized that conduct that “risks harm to many is likely more reprehensible than conduct that risks harm to only a few ... [a]nd a jury consequently may take this fact into account in determining reprehensibility.” Id. at 357, 127 S.Ct. 1057.
Exxon Mobil contends Plaintiff was allowed to introduce evidence regarding harm to nonparties without the necessary safeguards to prevent the jury from considering this evidence in its award of punitive damage. We disagree and find the trial court set forth the correct statement of law when instructing the jury on whether punitive damages should be awarded to Plaintiff and adequately limited the jury’s consideration of punitive damages for harm to the Plaintiff as opposed to nonparties.
The trial court instructed the jury on punitive damages as follows:
*1288 The purpose of Louisiana’s punitive damage law, Article 2315.3, is threefold: One, to penalize and punish defendant for engaging in wanton and reckless disregard for the plaintiffs safety in the storage, handling, or transportation of hazardous or toxic substances that cause injury to the plaintiff; two, to deter the tortfeasor or others who might follow their example from exposing the plaintiff to dangers of that kind in the future; and, three, to provide the plaintiff |22injured by such conduct with the incentive to act as the prosecutor of penal laws against such wrongdoers.
In some situations, a plaintiff may recover punitive damages for a defendant’s wanton and reckless disregard for public safety in the storage, handling, or transportation of hazardous substances. In order to obtain an award of punitive damages, the plaintiff must establish by a preponderance of the evidence that, one, the defendant’s conduct was wanton and reckless, involving extreme departure from ordinary care in a situation when high degree of danger is known or apparent; two, that the damage created by the defendant’s wanton and reckless conduct threatened or endangered the plaintiff; three, that the defendant’s wanton and reckless conduct occurred in storage, handling, or transportation of hazardous or toxic substances; and, four the plaintiffs injury was caused by the defendant’s wanton and reckless conduct. All element [sic] must be present for award of punitive damages.
For the purpose of awarding punitive damages, “wanton and reckless” means something more than mere negligence. The defendant must have known that plaintiff was at risk or should have known it was highly probable the harm to the plaintiff would result as a result of his conduct.
The only reference the trial court made to harm or potential risk of harm to non-parties was its explanation that punitive damages may be recovered where a defendant’s conduct shows wanton and reckless disregard for public safety. As the Supreme Court recognized in Philip Morris, the reprehensible nature of a defendant’s conduct is a factor which the jury may consider in deciding whether punitive damages are warranted. The trial court carefully instructed the jury that punitive damages could only be awarded if Plaintiff proved Exxon Mobil’s wanton and reckless conduct threatened or endangered Plaintiff, and that Exxon Mobil knew or should have known probable harm to Plaintiff would result from its conduct.
We find the jury instructions adequately instructed the jury to only consider the harm cause to Plaintiff in determining whether to award punitive damages in compliance with the constitutional mandates of Philip Moms. As such, we do not igjfind that a special instruction was needed to ensure that the jury did not consider harm to nonparties when awarding punitive damages.
d) Constitutional Excessiveness of Punitive Damage Award
In this assignment of error, Exxon Mobil argues the $10 million punitive damage award is unconstitutionally excessive because it is almost 12 times the $850,000 compensatory damage. Because we have determined that Plaintiff is only entitled to $2,370,370 in punitive damages, we find this issue is moot.

MR. OLESZKOWICZ’S APPEAL ISSUES

Plaintiff x-aises three issues on appeal. First, he ai'gues thei'e is no evidence to *1289 support the jury’s finding of comparative fault. Second, Plaintiff maintains the trial court erred in ordering the punitive damage award be reduced by his comparative fault. And, third, he claims the trial court erred in ordering legal interest on the punitive damage award to run only from the date of judgment as opposed from the date of judicial demand.

LAW & ANALYSIS

Comparative Fault

In his first assignment of error, Mr. Oleszkowicz argues there is no evidence to support the jury’s assessment of comparative fault.
Under La. C.C. art. 2323, “[i]f a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.”
|24In determining the percentages of fault, the trier of fact is to consider the nature of the conduct of each party at fault and the extent of the casual relation between the conduct and the damages claimed. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (La. 1985). Factors that affect the degree of fault of the parties include: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Id.
The allocation of fault is a factual determination which is reviewed under the “clearly wrong” standard. Clement v. Frey, 95-1119 (La.1/16/96); 666 So.2d 607, 611. Only if the reviewing court finds a “clearly wrong” apportionment of fault, should it adjust the award. Id. Great deference is given to the allocation of fault as determined by the trier of fact. Fontenot v. Patterson Ins., 09-669 (La.10/20/09); 23 So.3d 259, 274.
Upon review of the record, we do not find the jury was clearly wrong in apportioning 20% of fault to Plaintiff. The record shows Plaintiff smoked one to two pack of cigarettes a day since his early 20’s. According to Exxon Mobil’s expert witness, Dr. Emanuel Rubin, the American Cancer Society lists smoking as a risk factor for prostate cancer. Thus, we find the jury’s allocation of 20% fault to Mr. Oleszkowicz was reasonable under the facts presented to the jury, and we find no clear error.

Reduction of Punitive Damages by Comparative Fault

Plaintiff next asserts the trial court erred in reducing his punitive damage award by the amount of his assigned comparative fault of 20%. Exxon Mobil 12r,contends that the clear language of La. C.C. art. 2323(B)[6] mandates application of comparative fault to all damages, including punitive damages. We agree with Plaintiff and find Exxon Mobil’s argument ignores the intent of compensatory damages, comparative fault, and the fundamental purpose of punitive damages.
“It is a familiar rule of statutory construction that the general purpose and ob *1290 ject of the law must be kept in mind and the statute given such fair and reasonable interpretation as will effect the purpose and object for which it was enacted.” Miller v. LAMMICO, 07-1852 (La.1/16/08); 973 So.2d 693, 706.
The purpose of compensatory-damages is to recompense a plaintiff for injury caused by a defendant’s act. Ross v. Conoco, Inc., 02-299 (La.10/15/02); 828 So.2d 546, 552. The goal of general damages is to restore the injured party, as nearly as possible through the payment of money, to the same position he or she was in before the wrongful injury occurred. Rhodes v. State through Dept. of Transp. and Development, 94-1758 (La.App. 1 Cir. 12/20/96); 684 So.2d 1134, 1144. The purpose of Louisiana’s comparative fault scheme is to ensure that each tortfeasor is responsible only for that portion of the damage he has caused. Miller, supra. Any reduction in a plaintiffs recovery represents a way of making the plaintiff “pay” for his or her proportional responsibility.
On the other hand, punitive damages are not caused by a defendant’s act and are not designed to make an injured party “whole.” Rather, the purpose of punitive damages is to punish the tort-feasor and deter specific conduct to protect the public interest. Ross v. Conoco, Inc., 02-299 (La.10/15/02); 828 So.2d 546, 552. Thus, punitive damages necessarily focus on the behavior of the defendant, not the plaintiff, and are regarded as a fine or a penalty for the protection of the public li)fiinterest. Rivera v. United Gas Pipeline Co., 96-502 (La.App. 5 Cir. 6/30/97); 697 So.2d 327, 334, writs denied, 97-2030, 97-2031, 97-2032, 97-2034 (La.12/12/97); 704 So.2d 1196 and 704 So.2d 1197. In other words, the goal of punitive damages is punishment and deterrence, not recovery.
To be subject to punitive damages, a party’s individual conduct must fall within the scope of the applicable penal statute. Ross, supra. Prior to its repeal in 1996, La. C.C. art. 2315.3 provided in pertinent part:
In addition to general and special damages, exemplary damages may be awarded, if it is proved that the plaintiffs injuries were caused by the defendant’s wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.
The plain language of former La. C.C. art. 2315.3 does not indicate that the legislature intended for parties engaged in activities beyond direct storage, handling, or transportation of a hazardous or toxic substance to fall within the ambit of the Article. Ross, 828 So.2d at 553. It is the behavior of wanton and reckless disregard for public safety to which the punitive damage award is addressed. Plaintiffs proportional responsibility for his injuries do not fall within the behavior sought to be punished by Article 2315.3.
Additionally, we do not find that imposing partial responsibility on Plaintiff for his comparative fault related to his injury would satisfy the purpose of Article 2315.3. The three-fold purpose of Article 2315.3 was (1) to penalize and punish defendants for engaging in wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances that causes injury to others; (2) to deter the tortfeasors and others who might follow their example from exposing the public to dangers of that kind in the future; and (3) to provide victims injured by such conduct with the incentive to act as the prosecutors of penal laws against such wrongdoers. Oubre v. Union Carbide Corp., 99-63 (La.App.27 5 Cir. 12/15/99); 747 So.2d 212, 227, writs denied, 00-472 and 00-473 (La.4/20/00); 760 So.2d 346. Reducing the punitive damage award *1291 by Plaintiffs comparative fault serves none of these purposes.
Furthermore, to allow punitive damages to be reduced by a plaintiffs comparative fault would undermine the purpose of punitive damages. First, allowing a defendant to shift a portion of the cost of a punitive award back to the plaintiff through comparative fault would reduce the punishment and deterrent effect of the award. Second, any reduction in the defendant’s punishment inflicts a corresponding amount of punishment on the plaintiff. And, third, it would be inappropriate to reduce the punitive damages by comparing the plaintiffs negligence with the defendant’s wanton and reckless conduct.
Accordingly, we hold that the comparative fault scheme of La. C.C. art. 2823 does not apply to an award for punitive damages.[7] Thus, we find the trial court erred in reducing Plaintiffs punitive damage award by his comparative fault.

Legal Interest on Punitive Damages

Plaintiff argues that the trial court erred in refusing to award pre-judgment interest on the punitive damages award. In the original judgment dated March 19, 2012, the trial court awarded Plaintiff legal interest on the punitive damage award “from date of judicial demand until paid.” In response to Exxon Mobil’s motion for new trial, the trial court amended the judgment and awarded Plaintiff legal interest on the punitive damage award “from date of judgment until paid.”
Under La. R.S. 13:4203, “[l]egal interest shall attach from date of judicial demand, on all judgments, sounding in damages, ‘ex delicto,’ which may be ^rendered by any of the courts.” The Louisiana Supreme Court has stated that, “[b]oth federal and state jurisprudence is nearly uniform in holding that penalty interest is entirely of the post-judgment variety, and thus is calculated only from the date the penalties are awarded until the date they are paid.” Sher v. Lafayette Ins. Co., 07-2441 (La.4/8/08); 988 So.2d 186, 203, quoting Sharbono v. Steve Lang & Son Loggers, 97-110 (La.7/1/97); 696 So.2d 1382, 1389. The supreme court explained that penalties are not awarded to make the injured party whole, but rather are awarded to discourage a particular activity on the part of the other party. Sharbono, 696 So.2d at 1386. It further explained that a damaged party is not automatically entitled to penalties. Thus, the supreme court reasoned penalties come due only upon the date of award and, thus, may not earn interest until after that date. Id. at 1389.
Although the Sher and Sharbono courts addressed the prohibition of pre-judgment interest on penalties in the realm of workers’ compensation and insurance, the same rationale has been applied to punitive damages awarded under La. C.C. art. 2315.3. See Lester v. Exxon Mobil Corp., 12-1709 (La.App. 4 Cir. 6/26/13); 120 So.3d 767, 784-85. Thus, we find no error in the trial court’s denial of pre-judgment interest on the punitive damage award.

DECREE

For the foregoing reasons, we affirm the judgment finding Exxon Mobil liable to Mr. Oleszkowicz for $850,000 in damages caused by his exposure to NORM while working at the ITCO pipeyard. We also affirm the. reduction of the award for compensatory damages by Plaintiffs compara *1292 tive fault, determined by the jury to be 20%.
We further affirm the award of punitive damages, but reduce the amount of punitive damages from $10 million to $2,370,370. Because we find that | ¡^comparative fault does not apply to an award for punitive damages, we reverse that portion of the judgment reducing Plaintiffs punitive damage award by his amount of comparative fault. In all other respects, the judgment is affirmed. Each party is to bear his own costs for this appeal.

AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART.

. In re: Harvey TERM, No. 2001-8708, Division D.

. Lester CDC, No. 02-19657.

. Specifically, Exxon Mobil contends the jury charge was based on Title 42 of the Code of Federal Regulation, section 82.2, which addresses the methods for conducting dose reconstruction under the energy employees’ occupational illness compensation program. It states, in pertinent part:
If radiation exposures in the workplace environment cannot be fully characterized based on available data, default values based on reasonable and scientific assumptions may be used as substitutes. For dose reconstructions conducted in occupational illness compensation programs, this practice may include use of assumptions that represent the worst case conditions.

. Specifically, the Lester II judgment did not dismiss any of the plaintiffs’ claims without prejudice and the Lester II judgment did not reserve the right of the plaintiffs to bring another action for punitive damages.

. Added by 1984 Acts No. 335, § 1, effective September 4, 1984; repealed by Acts 1996, 1st Ex. Sess. No. 2, § 1, effective April 16, 1996. Article 2315.3 provided in pertinent part: "In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff’s injuries were caused by the defendant’s wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.”

. La. C.C. art. 2323(B) provides that comparative fault doctrine applies "to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.”

. We note that in the majority of jurisdictions, direct reduction of a punitive damage award by a plaintiff’s percentage of fault is rejected because such reduction is inconsistent with the purposes of punitive damages to punish and deter. See Clark v. Cantrell, 332 S.C. 433, 504 S.E.2d 605, 610, n. 5 (Ct.App.S.C.1998), affm'd as modified, 339 S.C. 369, 529 S.E.2d 528 (2000), and Lira v. Davis, 832 P.2d 240, 242-43 (Colo.1992), and cases cited therein.